EDGAR L. AMOS, JR., Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 5—88—0352

Opinion filed December 6, 1989.

Thomas W. Alvey, Jr., and Kurt E. Reitz, both of Thompson & Mitchell, of Belleville, for appellant.

Glenn E. Bradford and Terrence V. O'Leary, both of Morris B. Chapman & Associates, Ltd., of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Norfolk & Western Railway Company, appeals from a judgment entered against it January 22, 1988, by the circuit court of Madison County. A jury had rendered a verdict in favor of plaintiff, Edgar L. Amos, Jr., in his Federal Employer's Liability Act action against defendant in the amount of $800,000 for injuries sustained while employed by defendant railroad.

Plaintiff was employed by defendant as a conductor and switch-man. On the morning of August 22, 1984, part of plaintiff's duties was to throw a switch known as the production pocket lead switch. Plaintiff had had trouble throwing this switch in the past and had reported the difficulty to defendant. On that morning, while plaintiff was attempting to throw the switch, it suddenly became stuck and plaintiff felt a pain in his lower back. He was taken to the hospital and has received treatment ever since.

Defendant raises three issues on appeal: (1) whether the trial court erred in refusing to submit to the jury defendant's tendered instruction on plaintiff's duty to mitigate his damages by seeking employment as soon as possible after the injury; (2) whether the trial court erred in admitting into evidence under the business record exception to the hearsay rule plaintiff's exhibits 3, 4 and 5, which were summaries of recorded statements of three railroad employees taken by a railroad claim agent; (3) whether the trial court erred in denying defendant's motion *in limine* to exclude the testimony of David Bayer, an employee of defendant, who was called by plaintiff but not revealed as a witness to defendant until the day before trial began. We will set forth the facts only as they are necessary to our disposition of this cause.

At trial, defendant tendered two alternate jury instructions on plaintiff's duty to mitigate his damages. The first, based on *Brown v. Chicago & North Western Transportation Co.* (1987), 162 Ill. App. 3d 926, 516 N.E.2d 320, reads as follows:

"An injured party is under a legal obligation to mitigate his damages, that is to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can reasonably be done.

Failure of the injured party to make reasonable effort to

minimize damages does not prevent all recovery for economic loss, but it does preclude recovery for damages or losses which could have been avoided had a reasonable effort to lessen damages been made."

The second jury instruction is based on *Baker v. Baltimore & Ohio R.R. Co.* (6th Cir. 1974), 502 F.2d 638, and reads as follows:

"The law does require that any person who sustains a personal injury must mitigate his damage to the extent reasonably possible. Therefore, with respect to any claim of the plaintiff concerning a reduction in earning power, future lost wages or any inability to earn as much in the future as he would have been able to earn but due to the injuries sustained in October of 1984, [*sic*] the plaintiff was required to mitigate his damage, and such mitigation may include further scholastic training, vocational rehabilitation training or any other preparation reasonably necessary to improve the plaintiff's earning ability in light of his injury."

Plaintiff objected, arguing that, although plaintiff's duty to mitigate damages is properly argued to the jury, it is not properly the subject of an instruction. Plaintiff pointed out that the instruction is not an Illinois Pattern Jury Instruction, nor has such an instruction been approved by the United States Supreme Court, the Seventh Circuit Court of Appeals, the Illinois Supreme Court or the Fifth District Appellate Court.

The trial court refused defendant's instructions, refusing to follow the decision of the First District Appellate Court in *Brown v. Chicago & North Western Transportation Co.* (1987), 162 Ill. App. 3d 926, 516 N.E.2d 320, until the Illinois Supreme Court or the Fifth District Appellate Court followed suit.

In *Brown*, plaintiff was injured while working for defendant railroad. He brought suit to recover for his injuries pursuant to the Federal Employer's Liability Act (hereinafter FELA). A jury returned a verdict in favor of plaintiff for the value of his past and future lost wages, pain and suffering and for his disability. Defendant appealed, arguing that the trial court erred in failing to instruct the jury on plaintiff's duty to mitigate his damages by resuming gainful employment as soon as such could reasonably be done.

The appellate court reversed the trial court, holding that an employee does have a duty to mitigate damages by returning to gainful employment as soon as reasonably possible. Furthermore, a party is entitled to an instruction based on its theory of the case if there is record evidence to support it. The court found the question to be, then,

whether there was record evidence to support the defendant's allegation that plaintiff had failed to make a reasonable effort to mitigate his damages. The appellate court found that there was sufficient evidence to raise a factual question for the jury concerning plaintiff's alleged failure to mitigate from which a jury might reasonably conclude that plaintiff was indifferent to finding alternative employment. That evidence was that plaintiff refused to cooperate with the defendant's efforts to place him in another position within the company, plaintiff refused defendant's plans to provide him with free rehabilitation and counseling services, and plaintiff refused defendant's offers to fund vocational or scholastic training calculated to assist him in obtaining alternative employment.

The evidence further showed that one of plaintiff's physicians advised him that he could return to work and that his injury was not serious or chronic. All medical tests consistently indicated that there was nothing objectively wrong with plaintiff. A physician certified in rehabilitation examined plaintiff and testified that plaintiff's injury precluded any employment involving lifting, standing or walking. He concluded that plaintiff's physical limitations could be permanent in nature, but also admitted that plaintiff might fully recover. A psychiatrist testified that he advised plaintiff to pursue the employment and rehabilitation opportunities offered by defendant. A vocational rehabilitation counselor testified that, considering plaintiff's physical limitations, plaintiff could hold a job with a salary ranging from $10,400 to $18,000.

■ We find that *Brown* accurately concluded that under applicable Federal cases an employee has a duty to mitigate his damages by returning to employment as soon as reasonably possible. (*Brown*, 162 Ill. App. 3d at 932, 516 N.E.2d at 325.) However, we also find that there was not sufficient evidence in the record to warrant the giving of the mitigation instruction in this case. We therefore affirm the trial court's refusal to submit the tendered instruction to the jury.

Before setting out the relevant evidence adduced at trial, we point out that the burden of proving plaintiff's failure to mitigate damages is on the defendant. (*Brown*, 162 Ill. App. 3d at 935, 516 N.E.2d at 327.) The evidence adduced at trial on this point is as follows. Plaintiff testified that he completed the tenth year of formal schooling, but received mostly "D" grades and some "C" grades. He dropped out of school and found employment at a cafeteria. He then enlisted in the Navy, where he served as an aircraft mechanic. While in the Navy, plaintiff received his "GED." Plaintiff served in the Navy 4½ years and received an honorable discharge. He then became employed at Mc-

Donnell-Douglas in St. Louis as an air frame mechanic. Plaintiff left that job in less than a year because he did not feel competent to perform it. In 1966, plaintiff went to work for a railroad as a switchman. He worked for a railroad as a switchman and conductor until his accident. As a conductor, plaintiff was in a supervisory position over the other train crew members.

Following his accident, plaintiff continued to suffer pain in his back. He treated with a chiropractor who referred him to Dr. Shoedinger. Dr. Shoedinger attempted to treat plaintiff's injury conservatively. The pain was lessened somewhat, but remained severe. Plaintiff had surgery on his back in November 1985. This surgery did not help plaintiff at all. His right heel and right buttock were numb from nerve damage. The numbness in the heel eventually went away, but his right buttock remains numb. Thereafter, plaintiff received ultrasound treatment two times a week, which helped but did not completely alleviate the pain.

Plaintiff also sought treatment from Dr. Chen, a specialist in pain management. Plaintiff received several nerve blocks, which helped control the pain only temporarily.

Plaintiff described his condition at the time of trial. He testified that his lower back feels as if it is completely "wore out" and his tailbone feels like "bone against bone." Plaintiff described his pain as unbearable at times. He must lie down at least once a day with a heating pad for 30 to 40 minutes. He is unable to sit or stand in one place for long and suffers cramps if he walks too much. He has suffered pain since the accident. Plaintiff is unable to lift anything. When he sits in a chair it must have arms, which he uses to lift his weight with his elbows. If plaintiff pushes himself too hard, he has to go to bed for two or three days.

Plaintiff testified that approximately two years after his accident, defendant offered him full rehabilitative services at no charge. Plaintiff told the defendant that if his attorney approved it, he would accept the offer and referred the defendant to his attorney. Plaintiff did not believe defendant had contacted his attorney.

Dr. George R. Shoedinger III, plaintiff's orthopedic surgeon, testified that he first saw plaintiff in November 1984. X rays taken in September 1984 revealed evidence of a ruptured disc in plaintiff's low back. Shoedinger attempted to treat plaintiff conservatively. Because plaintiff's pain was intolerable, he was admitted to the hospital in January 1985. A myelogram was performed and revealed several defects in plaintiff's spine. In January 1985, plaintiff was treated with a procedure called chemonucleolysis, which involves injecting a substance into

a spinal disc to dissolve the cartilage therein. Plaintiff's condition did not improve, and surgery was performed on his back in September 1985. Following surgery plaintiff continued to have severe pain in his back. Shoedinger informed plaintiff that he would not be able to return to his former job. Plaintiff would be unable to engage in unrestricted lifting, bending, pushing, pulling, twisting and other torsional motions of his back. Plaintiff would be unable to work in a job that required such activity. Shoedinger testified that plaintiff's condition was permanent.

Dr. T.Z. Chen testified that he is a physician specializing in pain management and anesthesiology. He first saw plaintiff in September 1987. He placed plaintiff on medication for pain and, in September 1987, performed four lumbar epidural nerve blocks. This helped only temporarily. Chen was of the opinion that plaintiff would be unable to engage even in a light duty or bench-type job. Plaintiff is unable to sit for extended periods of time, he cannot push or lift objects, nor is he able to twist his torso from side to side.

James England, Jr., testified that he is a rehabilitation counselor. Plaintiff was referred to England by plaintiff's counsel to evaluate plaintiff's employability. Before seeing plaintiff, England reviewed plaintiff's medical record. England met with plaintiff and obtained a history from him. England administered two tests to plaintiff. One was an academic achievement test and the other was a motor coordination test. England's initial evaluation of plaintiff took approximately four hours. England discussed with plaintiff his symptoms and physical problems, his past work activity, his medical treatment and how plaintiff spent his time since his injury.

The academic achievement test administered to plaintiff revealed that plaintiff reads at the end of the seventh-grade level, spells at the end of the eighth-grade level and performs math at the end of the ninth-grade level. England found that plaintiff had the ability to learn new things.

The motor coordination test is designed to test how fast a person can move his dominant hand back and forth in a quick activity. The purpose is to determine whether the individual could be involved in a job that required rapid writing or rapid movement of the hands in general, as on an assembly line. Plaintiff scored substantially below average on this test. England found that plaintiff had very few transferable job skills.

Based upon plaintiff's medical records and England's evaluation, England was of the opinion that plaintiff would not be able to return to his job with the railroad. England was unable to find any type of

employment which plaintiff could perform based on his overall limitations. Plaintiff would be unable to get through an eight-hour day without alternately sitting, standing or lying down. He is unable to sit without leaning on his elbows to take the weight off his back, and his motor coordination is slow. Taking all of these factors together, plaintiff would be unable to perform even a job that would allow him to alternately sit and stand, such as assembly-type work or work at a self-service gas station. Plaintiff is unable to perform work on a sustained basis and could not retain even a sedentary job. England did not think that vocational rehabilitation would help plaintiff.

Defendant presented the testimony of Douglas Cole, an occupational therapist and director of a work-hardening therapy program, and June Blaine, a vocational rehabilitation counselor. Cole testified that at the request of defendant, he reviewed plaintiff's medical records, plaintiff's deposition, the deposition of Dr. Shoedinger and the vocational evaluation of plaintiff's rehabilitation counselor, James England. Based upon plaintiff's physical limitations as described by Dr. Shoedinger, Cole was of the opinion that plaintiff could work at the sedentary or light level. Cole believed that plaintiff would benefit from additional therapy.

On cross-examination, Cole admitted that if plaintiff was restricted from any torsional movement it would impede his ability to perform a sedentary or light-level job. Cole also admitted that he had never met nor evaluated plaintiff personally and that a physical evaluation would be necessary before Cole could be sure of his opinion.

June Blaine, a vocational rehabilitation counselor, testified that she reviewed Dr. Shoedinger's deposition and medical reports, plaintiff's deposition and medical records, James England's report and Douglas Cole's deposition. She found that plaintiff had several transferable work skills. They were good, solid work attendance, skills as a mechanic and supervisory skills as a conductor for the railroad. She opined that, based upon Dr. Shoedinger's restrictions on plaintiff's activities, plaintiff could be placed in employment. She testified that numerous employers are interested in employing disabled people.

On cross examination, she testified that the restriction on torsional movements is quite significant. Blaine never met personally with plaintiff.

■■ ■ While a party is entitled to an instruction based on his theory of the case if there is record evidence to support it (*Brown*, 162 Ill. App. 3d at 932, 516 N.E.2d at 325), we do not think that defendant presented sufficient evidence to raise a factual question as to whether plaintiff took reasonable actions to mitigate his damages by returning

to employment as soon as possible after his injury. The weight of the evidence shows that plaintiff has been at all times unable to return to any type of employment. The two expert witnesses presented by defendant had never met, examined or interviewed plaintiff. The question is whether plaintiff acted reasonably in failing to seek employment. Defendant has not presented sufficient evidence that plaintiff acted unreasonably in failing to seek employment after his injury. Where the evidence shows that a plaintiff is unable to obtain employment because of his injuries, it is reasonable that he not seek employment.

The instant case differs from *Brown*, where the evidence as to plaintiff's disability was conflicting. Plaintiff in *Brown* was advised by one of his physicians that his condition was not serious and that he could return to work. A vocational rehabilitation counselor testified that the plaintiff in *Brown* could return to work. Furthermore, in *Brown*, the plaintiff refused to cooperate with his employer, who offered him another position with the company or free rehabilitation services. The court in *Brown* found that there was sufficient evidence that plaintiff had acted unreasonably in failing to seek other employment following his injury to submit the question to the jury.

In the instant case, plaintiff's physician testified to plaintiff's serious and permanent disability. Furthermore, the instant plaintiff did not refuse defendant's offer of rehabilitative services, but referred the offer to his attorney. Defendant did not present sufficient evidence to warrant the giving of a mitigation instruction.

The second argument set forth by defendant is that the trial court erred in admitting into evidence plaintiff's exhibits 3, 4 and 5. The exhibits are summaries of recorded statements of three railroad employees taken by the railroad claim agent approximately one month after plaintiff's accident. The summaries relate to events on the day plaintiff was injured and are not favorable to the defendant. Defendant argues that the exhibits were improperly admitted into evidence because they constitute hearsay and do not fall within the business records exception to the hearsay rule. Defendant relies on the United States Supreme Court decision in *Palmer v. Hoffman* (1943), 318 U.S. 109, 87 L. Ed. 645, 63 S. Ct. 477, which held that admission of such reports was improper because accident reports are prepared in anticipation of future litigation rather than in the ordinary course of business, and the motivation in their preparation may affect their trustworthiness. However, in *Poltrock v. Chicago & North Western Transportation Co.* (1986), 151 Ill. App. 3d 250, 502 N.E.2d 1200, it was held that this rule does not apply where the report is sought to be

admitted *against* the party who prepared it. Where the report is damaging to the party who prepared it, as here, there is no reason to question its trustworthiness. As in *Poltrock*, the summaries of defendant's employees' statements were properly admitted under the business records exception to the hearsay rule.

■ Defendant also argues that the summaries should not have been admitted under the business records exception to the hearsay rule because, as summaries of oral statements, they contain conclusions and opinions of the individual making the summary, and because they are written summaries of an oral statement, they involve double hearsay. That the summaries may contain the conclusions or opinions of the preparer do not disqualify them under the business records exception to the hearsay rule. Instead, that fact affects only the weight of the evidence, not its admissibility. (*Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 407, 487 N.E.2d 798, 806.) Nor do we find anything in Supreme Court Rule 236, which sets forth the business records exception to the hearsay rule, which disqualifies what the defendant refers to as double hearsay. (107 Ill. 2d R. 236.) Rule 236 expressly states that lack of personal knowledge by the maker of the record may affect its weight, but not its admissibility. Both the oral statements and the summaries were made by employees of defendant in the regular course of defendant's business. In any event, the individual who prepared the summaries testified at trial as to their accuracy and was subject to cross-examination with respect to the contents of the summaries.

■ Finally, defendant argues that the summaries should not have been admitted because they were not prepared within a reasonable time after the accident. It is true that in order to be admissible as an exception to the hearsay rule, business records must have been prepared within a reasonable time after the act or occurrence to which they relate. (*People ex rel. Schact v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 344, 448 N.E.2d 950, 957.) The oral statements upon which the summaries are based were taken on September 11, September 12 and September 24, 1984, within approximately one month of the occurrence to which they relate. We think this is a reasonable time in which to take the oral statements. The record does not indicate when the summaries were prepared. However, the oral statements were preserved by tape recording so that the summaries based thereon could be checked for accuracy against the tape recordings and are sufficiently reliable to be admissible.

The final argument raised by defendant is that the trial court erred in refusing to bar the testimony of David Bayer and the admission into

evidence of plaintiff's exhibit 1. David Bayer was a conductor on defendant's railroad during and prior to August 1984. On August 9, 1984, Bayer prepared and submitted to the defendant railroad a report entitled "Unsafe and/or Hazardous Condition Report," which describes the production pocket switch on which plaintiff was injured as being "hard to throw." The report indicates that it was sent to numerous supervisory employees of defendant. Plaintiff did not discover the existence of this report or witness until sometime after January 11, 1988. Plaintiff did not reveal the existence of the report or witness to defendant until January 18, 1988. Plaintiff did not notify defendant that he intended to call Bayer as a witness until the morning trial was to begin. Trial of this cause began on January 19, 1988. At the time of trial, Bayer remained an employee of defendant railroad.

Immediately prior to the beginning of trial, defendant made an oral motion *in limine* to bar the testimony of Bayer or admission of the report under Supreme Court Rule 219(c)(iv) because neither the name of the witness nor the existence of the report was revealed in plaintiff's answers to interrogatories. The trial court denied the motion, finding that plaintiff's actions had not been to intentionally keep the existence of the witness or report secret from defendant. The trial court did offer defendant the opportunity to interview Bayer prior to his testimony, and indicated that, should that interview reveal something that would cause the defendant to require additional time, the court would consider such a request. Defendant contends that the trial court erred in not barring the evidence.

Whether to impose sanctions against a party for noncompliance with discovery rules is within the discretion of the trial court. (*Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 4, 422 N.E.2d 241, 243.) We find no abuse of discretion in the trial court's refusal to bar the evidence. The court found that plaintiff did not act contumaciously in failing to disclose the evidence at an earlier date, and this finding is supported by the record. Indeed, the witness and the report were presumably within the control of defendant, although defendant denied that it had ever received the report. We find no error in the trial court's denial of defendant's motion *in limine*.

For the foregoing reasons the judgment of the circuit court of Madison County is affirmed.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.