JAMES TALUZEK, Plaintiff-Appellant, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellee.

First District (1st Division) No. 1—91—1025

Opinion filed October 12, 1993.

74

David A. Novoselsky & Associates (David A. Novoselsky, of counsel) and Philip E. Howard, Ltd., both of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, Michael A. Pollard, and Joan O'Reilly Oh, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is a suit for damages, brought under the Federal Employer's Liability Act (45 U.S.C. §51 *et seq.* (1988)), arising from an accident which occurred in one of the train yards belonging to defendant, Illinois Central Gulf Railroad Company. Plaintiff, James Taluzek, a locomotive engineer for defendant, fell from a locomotive owned by defendant. A jury returned a verdict in defendant's favor that plaintiff now appeals.

We affirm.

On the morning of December 23, 1985, plaintiff was the engineer of the locomotive in question and was assembling trains by "switch-

ing" boxcars from track to track. Plaintiff had been working on the locomotive for about 45 minutes when its engine quit. In order to restart the engine, plaintiff had to leave the locomotive's cab and walk to the engine compartment, which was recessed off an 18-inch catwalk on the locomotive's left side. A handrail, running continuously around three of the locomotive's four sides, is affixed at approximately shoulder height, 63½ inches, above the surface level of the catwalk. Plaintiff stated that, before exiting the cab, he looked down at the catwalk, but did not see anything unusual. He walked along the catwalk sideways, grabbing at the handrails above him in a "hand over hand" manner. Plaintiff opened the doors to the engine compartment, turned the "starter switch" with his left hand, and pulled the "lay shaft" with his right hand. As he pulled back on the lay shaft, he turned his body to the right and raised his right leg. When he attempted to put his right foot down, his leg "slipped out from under" him. Plaintiff fell backwards to the ground. The next thing he can recall is being placed in an ambulance. Although he never saw what his foot slipped on, plaintiff stated that it "felt like either grease or oil."

Frank Felice was the fireman working with plaintiff in the locomotive's cab at the time of the accident. When the engine quit, Felice saw plaintiff leave the cab although he did not see plaintiff fall. After four to five minutes passed, Felice looked out onto the catwalk because the engine had not yet restarted. Felice saw plaintiff on his back, sprawled on the ground. Plaintiff told Felice that he had slipped off the engine.

After summoning help, Felice went onto the catwalk in order to restart the engine because he wanted to move the locomotive so that paramedics could reach plaintiff. While on the catwalk, Felice noticed a "semi-round," "pond-shaped" pool of oil or "some other substance" dripping off the catwalk. This oil was outside of the engine compartment doors, which were opened. Felice did not know from where the oil had come nor could he recall whether the oil was clean or dirty, light or dark. Felice stated that while he was restarting the engine, he, too, stepped in the oil. Felice did not notice any footprints in the oil before he stepped in it. The oil puddle was only on the outside of the engine compartment, and no oil appeared on the floor inside the engine compartment. Felice admitted that one could "draw" oil from the "governor" which was located inside the engine compartment.

During its case in chief, defendant sought to establish that the oil appeared on the catwalk only after plaintiff had fallen and, thus, could not have caused the fall. To that end, John Jurczyk, defendant's general foreman at the time, testified that he conducted an inspection

of the equipment shortly after plaintiff's fall. Accompanying him was Ed Orlowski, a machinist who was to assist in the inspection. When Jurczyk arrived at the scene, plaintiff had been placed in the ambulance. Felice told Jurczyk that plaintiff had slipped in some oil on the locomotive and had fallen to the ground. Jurczyk found a puddle of "fresh," clear, yellow oil of "recent origin" on the catwalk. No footprints were in the oil nor was any oil dripping off the side of the catwalk. The oil puddle was round, "pie-shaped," and approximately 18 inches in diameter. Jurczyk believed the oil was "fresh" because it was "still puddled." Based on his experience, Jurczyk did not believe the oil had been present when the locomotive was running because the puddle would have lost its round appearance and would have been spread out more. Jurczyk scraped some of the oil off the catwalk and let it drip off the side into a paper cup in order to obtain a sample. He then directed Orlowski to sand the area. Jurczyk and Orlowski examined the locomotive and found no oil leaks in either the compressors or the inside of the engine compartment.

Ed Orlowski's testimony matched Jurczyk's in most aspects. Orlowski stated that he did not see any footprints in the "round disk" of oil that was on the catwalk. Orlowski found no evidence of either defects or leaks on the locomotive. Orlowski explained that, to start the engine in question, one had to "prime" the engine first by filling it with fuel oil. After that is completed, the starter button has to be pushed. Orlowski examined these components on the engine and found no oil leakage. Orlowski stated that, in the engine compartment, someone could "drain oil on the governor" or from the "crank case." In Orlowski's opinion, the oil that he saw on the catwalk could not have come from the crank case because oil from that source has a heavy consistency. In contrast, oil from the "governor" is a clear, fine oil. The oil on the catwalk resembled oil from the "governor." Orlowski stated that in order for the oil on the catwalk to appear as the result of a leak from the "governor," the floor of the engine compartment would have had to have been flooded with oil, causing it to overflow onto the catwalk. Orlowski found no evidence of such flooding in his inspection.

Defendant also played for the jury a tape recording of plaintiff recorded on January 13, 1986, some two weeks after the fall. Plaintiff recalled the accident in the following manner:

> "My left hand went from trying to start and my right hand went to work the shaft and the next thing I knew I was on the ground and the fireman was trying to wake me up."

When asked if anything had caused him to fall, plaintiff responded that he "didn't notice there was [sic], but the conductor and the fireman said there was oil on the catwalk."

The jury also heard extensive testimony regarding plaintiff's medical condition. It was the opinion of plaintiff's doctor and experts that plaintiff suffers from post-traumatic encephalopathy—brain damage following a head trauma. This condition manifests itself in the form of severe headaches, depression, mood swings, and sexual dysfunction. However, defendant's medical expert disagreed with the diagnosis and attributed plaintiff's condition to depression and low self-esteem. He cited plaintiff's history of heavy drinking as an independent cause of the depression and mood swings. All the medical witnesses agreed that diagnostic tests, such as CAT scans and the like, revealed no objective evidence of brain damage and were considered "normal."

Following deliberations, the jury returned a verdict in favor of the defendant. The circuit court denied plaintiff's post-trial motion, and this appeal ensued.

Plaintiff asserts that the circuit court erred in denying his motion for judgment notwithstanding the verdict (judgment *n.o.v.*).

A court may grant a motion for judgment *n.o.v.* only when all the evidence, viewed in a manner most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 527, 515 N.E.2d 157; see also *Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 8, 413 N.E.2d 1345.) A judgment *n.o.v.* is improper where reasonable minds may differ as to inferences or conclusions to be drawn from the facts presented. (*Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 510, 492 N.E.2d 1364.) Where evidence demonstrates a substantial factual dispute, or where assessment of witnesses' credibility or resolution of conflicting evidence may determine the outcome, a court errs in entering a judgment *n.o.v. Lee v. Grand Trunk Western R.R. Co.,* 143 Ill. App. 3d at 509.

■ Plaintiff based his claim against defendant on the Federal Safety Appliance Act (45 U.S.C. §1 *et seq.* (1988)) and the Boiler Inspection Act (45 U.S.C. §22 *et seq.* (1988)). Those acts impose upon defendant an absolute and continuing duty to maintain the locomotive in proper condition. (*Lilly v. Grand Trunk Western R.R. Co.* (1943), 317 U.S. 481, 87 L. Ed. 411, 63 S. Ct. 347; *Rogers v. Consolidated R. Corp.* (2d Cir. 1991), 948 F.2d 858.) An action for violations of the acts is prosecuted as an action under the Federal Employers' Liability Act

(FELA) (45 U.S.C. §51 *et seq.* (1988)). Under FELA, a railroad company incurs liability for damages to any employee when there has been a violation of a safety statute specifically aimed at the railroad industry. (*Urie v. Thompson* (1949), 337 U.S. 163, 188-89, 93 L. Ed. 1282, 1302-03, 69 S. Ct. 1018, 1034-35.) Thus, violations of the acts are treated as negligence *per se* authorizing an action under section 51 of FELA. (*McCarthy v. Pennsylvania R.R. Co.* (7th Cir. 1946), 156 F.2d 877, 880, *cert. denied* (1947), 329 U.S. 812, 91 L. Ed. 693, 67 S. Ct. 635.) Liability is absolute upon proof of the unsafe part and proximate cause. *Green v. River Terminal Ry. Co.* (6th Cir. 1985), 763 F.2d 805, 810.

■ Based on the foregoing principles, plaintiff, in the present case, bore the burden of proving that there was something unsafe or defective on the locomotive which caused his fall. The evidence presented established that no one, not even plaintiff to a great extent, witnessed the actual fall. Thus, the jury had to weigh the testimony and assess witness credibility in order to determine what occurred. Plaintiff testified that he did not see anything unusual on the catwalk prior to walking to the engine compartment. Although his leg "slipped from under" him, plaintiff did not know what, if anything, he slipped on. Plaintiff merely testified that "it felt like oil or grease." Felice's testimony adds little. Felice admitted that he did not see plaintiff fall. Felice only saw a pool of oil dripping off the catwalk after plaintiff had fallen. Felice did not observe any footprints in the pool and could not recall its clarity. Seemingly, if plaintiff had slipped in this puddle of oil, some sort of footprint or smear would have been apparent to Felice. Seeking to draw a similar inference, defendant presented two witnesses who contradicted Felice's description of the puddle of oil. Both Jurczyk and Orlowski testified that the oil was in a round shape and had not been stepped in—even though Felice had testified that he, too, had stepped in the puddle. According to Jurczyk and Orlowski, the oil was light in color and looked "fresh." We note that both sides presented witnesses who testified to the fact that oil could be placed on the catwalk easily. Moreover, no evidence was adduced which would tend to prove causation, such as whether plaintiff's shoes bore traces of oil. Therefore, it was up to the jury to determine whether plaintiff indeed stepped in the oil, causing the fall. Given this substantial factual dispute, the circuit court correctly denied plaintiff's motion for judgment *n.o.v.*

■ Plaintiff next maintains that the jury's verdict was against the manifest weight of the evidence and that the circuit court erroneously denied his motion for a new trial.

A motion for a new trial is addressed to the sound discretion of the circuit court, and its decision will not be disturbed absent a clear abuse of discretion. (*Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 812, 537 N.E.2d 1348, *appeal denied* (1989), 127 Ill. 2d 620, 545 N.E.2d 114.) In rendering its decision, the court must determine whether the jury's verdict was against the manifest weight of the evidence. (*Mizowek v. DeFranco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary, and not based upon the evidence. (*Anderson v. Beers* (1979), 74 Ill. App. 3d 619, 393 N.E.2d 552.) "In determining the propriety of a new trial, neither a trial nor a reviewing court 'should sit as second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses.' " *Netzel*, 181 Ill. App. 3d at 812-13, quoting *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 271, 362 N.E.2d 446.

The circuit court did not abuse its discretion in denying plaintiff's motion. The evidence presented required the jury to choose between two inferences, whether the oil was present on the catwalk at the time plaintiff fell or whether it was not. Moreover, the jury had to determine whether the oil, if there, was the cause of plaintiff's fall. The jury decided that it was not, and the record evidence supports that finding. Accordingly, we cannot disturb the jury's verdict.

■ Plaintiff next contends that the trial court abused its discretion by granting defendant's motion *in limine* which sought to bar evidence that the grab rails and handrails on the locomotive could have been located in positions other than where they were. Specifically, plaintiff wanted to show that defendant operated other locomotives that were equipped with handrails which ran along the outside edge of the catwalk. This type of handrail, he asserts, was necessary to fully comply with section 4 of the Safety Appliance Act. That section provides that "it shall be unlawful for any railroad company to use any car [in interstate commerce] that is not provided with secure grab irons or handholds in the ends and sides of each car." (45 U.S.C. §4 (1988).) Defendant responded that any evidence of alternative handrails was irrelevant because the locomotive in question fully complied with Federal statutes and regulations. The circuit court granted the motion, finding that Federal law preempted the field.

On appeal, the parties present this issue as one involving the doctrine of preemption, but that doctrine is tangential to the resolution of the issue. Defendant contends that it did not violate the Safety Appliance Act because its engine was never cited for noncompliance dur-

ing regular inspections and because it met the requirements set forth in the regulations promulgated under the Safety Appliance Act. Plaintiff responds that the regulations at issue relate only to steam engines and not to diesel engines, like the one involved here, and therefore, he should have been permitted to introduce evidence of other handrail construction which would better provide for the safety of those working upon the locomotive and would better conform to the requirements of the Safety Appliance Act.

The Safety Appliance Act initially granted to the Interstate Commerce Commission the power to promulgate standards or regulations covering equipment so as to achieve the aims of the Act. (*Baltimore & Ohio Ry. Co. v. Jackson* (1957), 353 U.S. 325, 1 L. Ed. 2d 862, 77 S. Ct. 842.) That power later was transferred to the Secretary of Transportation by the Department of Transportation Act. (See *Marshall v. Burlington Northern, Inc.* (9th Cir. 1983), 720 F.2d 1149.) Congress has conferred upon that agency a broad scope of authority in setting forth the standards to be applied. (*Napier v. Atlantic Coast Line R.R. Co.* (1926), 272 U.S. 605, 71 L. Ed. 432, 47 S. Ct. 207.) When the agency has prescribed rules and specifications with regard to the Act, all that is required of the carrier in order to fulfill its duty in that respect is a strict compliance with those rules and specifications. (See *Baltimore & Ohio R.R. Co. v. Groeger* (1925), 266 U.S. 521, 69 L. Ed. 419, 45 S. Ct. 169; *Auschwitz v. Wabash Ry. Co.* (1931), 346 Ill. 190, 178 N.E. 403.) The determination regarding the equipment necessary to conform with the Act is one of fact which rests solely with the agency. (*Napier*, 272 U.S. at 612, 71 L. Ed. at 439, 47 S. Ct. at 209.) In view of this, the United States Supreme Court has noted that a jury cannot be permitted to substitute its judgment in lieu of the judgment of the agency, upon whom the law places the responsibility for such determination. *Baltimore & Ohio R.R. Co. v. Groeger*, 266 U.S. 521, 69 L. Ed. 419, 45 S. Ct. 169.

Defendant directs attention to section 231.17 (49 C.F.R. §231.17 (1992)), which provides the specifications for handrails and grab rails for the locomotive, arguing that its locomotive conformed to these specifications. As noted, plaintiff suggests that section 231.17 has no bearing on defendant's locomotive because that section deals only with steam locomotives. We disagree.

Section 231.18 provides:

"Cars of construction not covered specifically in the foregoing sections in this part, relative to handholds *** may be considered as of special construction, but shall have, as nearly as possible, the same complement of handholds *** as are re-

quired for cars of the nearest approximate type." (49 C.F.R. §231.18 (1992).)

We believe that the administrative agency has, by the inclusion of this language, subjected diesel engines to the same requirements as steam engines.

Section 231.17 requires that locomotives be equipped with wrought iron or steel handrails, not less than one inch in diameter, located one on each side of the locomotive, extending from near the cab to near the front end of the boiler. The handrails should be located not less than 24 nor more than 66 inches above the catwalk. (49 C.F.R. §§231.17(c)(2), (c)(3) (1992).) The handrails on the locomotive at issue here complied with these regulations. Prior to ruling on defendant's motion *in limine*, the circuit court conducted a hearing in which defendant presented the testimony of James Danielwicz, a mechanical superintendent employed by defendant, and William Bogett, a safety supervisor in General Motors' locomotive division. Bogett is also the liaison with the Federal Railroad Administration, consulting with the Office of Safety Enforcement when questions arise regarding compliance with Federal regulations. Both men testified that the locomotive in question complied with the Federal statutes with regard to handrails. In fact, Bogett stated that the last Federal inspection of the locomotive revealed no violations. The evidence adduced regarding the locomotive's features conforms to the requirements of section 231.17. The handrails here were 1¼ inches in diameter, ran along the sides of the locomotive extending from the front end near the cab to the boiler, and were mounted approximately 63 inches above the catwalk. Plaintiff presented no contradictory evidence. At the conclusion of the hearing, the court found these witnesses to be credible and accepted their testimony.

Given the locomotive's compliance with the applicable regulations and Congress' preemption in the area of railroad safety (see *Marshall v. Burlington Northern, Inc.*, 720 F.2d at 1152), the circuit court could not allow plaintiff to introduce evidence of better or safer compliance methods. Accordingly, the circuit court correctly granted defendant's motion.

■ Our disposition of the preceding issue bears upon plaintiff's next assertion of error. During the jury instruction conference, plaintiff tendered Illinois Pattern Jury Instructions, Civil, No. 170.03, which provided:

> "At the time of the occurrence there was in force a Federal statute which imposed upon the railroad the absolute duty to have all cars which it hauls or uses or permits to be hauled or

used on its line equipped with secure and adequate grab irons or handholds at the ends and sides of each car.

This statute is violated when a grab iron or handhold on a car is not secure or adequate for use.

If you find that the plaintiff was injured while engaged in the course of his employment by the railroad, and that the injury resulted in whole or in part from a violation of the duty imposed by this statute, then neither negligence on the part of the employee nor absence of negligence on the part of the railroad will excuse liability under the statute and the railroad is liable in damages for the injury." (Illinois Pattern Jury Instructions, Civil, No. 170.03 (2d ed. 1971).)

As noted, the circuit court properly barred any evidence regarding alternative handrail positions. Because plaintiff failed to produce any evidence of a Federal violation on the part of defendant, the circuit court correctly refused to give the above instruction to the jury.

■■ Plaintiff next complains of remarks made by defense counsel during closing argument which he claims suggested to the jury that plaintiff's co-workers placed the oil on the catwalk after the fall to set up a "fraudulent claim." Plaintiff, however, failed to object to the comments during trial. We previously have held that a "party cannot sit on his hands and let perceived errors into the record and complain of those errors for the first time in a post-trial motion." (*Pharr v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 509, 515, 581 N.E.2d 162. See also *Fakhoury v. Vapor Corp.* (1991), 218 Ill. App. 3d 20, 578 N.E.2d 121, *appeal denied* (1991), 142 Ill. 2d 653, 584 N.E.2d 128; *Daniels v. Standard Oil Realty Corp.* (1986), 145 Ill. App. 3d 363, 369, 495 N.E.2d 1019.) Thus, a failure to object to alleged errors in an opponent's closing argument results in a waiver of the objection. *Pharr*, 220 Ill. App. 3d at 515.

Nevertheless, plaintiff asks this court to review the issue because counsel's statement was so improper and prejudicial that it deprived him of a fair trial. Our review of the record reveals that the complained-of remarks make no overt reference to fraud or criminal activity as plaintiff contends. Moreover, the comment could be seen as a legitimate inference drawn from the evidence presented as a number of witnesses testified that oil could be drawn from the "governor" in the engine compartment. (See *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 460 N.E.2d 464.) The comment could be considered an inference properly drawn from the evidence presented; thus, we will not excuse plaintiff's waiver of the issue.

Plaintiff next raises three assertions of error concerning evidentiary rulings made by the circuit court. Generally, a party is not entitled to reversal based upon evidentiary rulings unless the error was substantially prejudicial and affected the outcome of the case. (*Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1066, 502 N.E.2d 315, *appeal denied* (1987), 114 Ill. 2d 559, 508 N.E.2d 738.) The trial judge is given the discretion in determining whether evidence is admissible. That determination will not be overturned upon review unless an abuse of discretion is clearly evident. *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 496 N.E.2d 1024.

■ Plaintiff first asserts that the circuit court erroneously admitted evidence of plaintiff's drinking history. Prior to trial, plaintiff moved to bar any reference or testimony which would establish that plaintiff had an alcohol abuse problem. Defendant sought to establish that plaintiff's drinking history proximately caused plaintiff's mental and physical conditions.

We note initially that the evidence in question did not relate in any way to plaintiff's sobriety at the time of the accident, but rather was cited as an independent cause of plaintiff's mental and physical condition. This is important because plaintiff's claim against defendant was for damages to compensate him for his injuries. Compensatory damages are designed to make a plaintiff whole and are not meant to punish defendant or to bestow upon plaintiff a windfall. (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 546 N.E.2d 524.) Defendant's medical expert testified that plaintiff's depression and other physiological problems were not caused by the fall, but by plaintiff's alcohol usage. Thus, the testimony relates to the amount of damages suffered by plaintiff and, as such, was admissible. See *Roberts v. Norfolk & Western Ry. Co.* (1992), 229 Ill. App. 3d 706, 719-20, 593 N.E.2d 1144, *appeal denied* (1992), 146 Ill. 2d 651, 602 N.E.2d 475.

■ Plaintiff also sought to introduce the typed statements of tape-recorded interviews with three of plaintiff's co-workers given, on the date of the accident, to a claims investigator employed by defendant. None of the men had witnessed plaintiff's fall, but all three stated that they had seen oil on the catwalk after the fall. The circuit court barred the statements, and plaintiff challenges that ruling.

At trial, plaintiff's counsel offered the exhibits as admissions. However, on review, appellate counsel first argues that the exhibits are admissible under Supreme Court Rule 236—the business document exception to the hearsay rule. (134 Ill. 2d R. 236.) A party is not per-

mitted to tender one theory of admissibility at trial and then argue an entirely different theory on appeal. (*People v. Robinson* (1992), 233 Ill. App. 3d 278, 282, 598 N.E.2d 1348, *appeal denied* (1993), 148 Ill. 2d 650, 610 N.E.2d 1272; *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132, *appeal denied* (1987), 114 Ill. 2d 553, 508 N.E.2d 733; *People v. Powell* (1985), 139 Ill. App. 3d 701, 487 N.E.2d 719; *People v. Miller* (1977), 55 Ill. App. 3d 136, 370 N.E.2d 639.) Accordingly, we will address only that theory propounded at trial, which plaintiff has also asserted here.

The written statements are out-of-court declarations offered for the purpose of establishing the truth of the matters asserted in them, and, as such, are hearsay. Generally, the substantive use of such a statement at trial is inadmissible unless it comes within a recognized exception to the hearsay rule. Admissions by agents are considered exceptions to the rule. (*Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, 339 N.E.2d 769.) Plaintiff asserts that the statements to the claims investigator constitute admissions made by agents. We, however, need not determine whether these statements are admissions because we believe any error made in excluding the evidence was harmless.

The improper exclusion of evidence of a fact fully established by other evidence or not disputed by the party against whom the evidence is offered is harmless error. (See, *e.g.*, *In re Estate of Veronico* (1979), 78 Ill. App. 3d 379, 396 N.E.2d 1095; *Braswell v. New York, Chicago & St. Louis R.R. Co.* (1965), 60 Ill. App. 2d 120, 208 N.E.2d 358; 3 Ill. L. & Prac. *Appeal & Error* §825 (1953).) The error cannot be considered harmless, however, if the evidence excluded is of greater probative force than that admitted or where the evidence is conflicting and the exclusion may have affected the result. *Braswell*, 60 Ill. App. 2d 120, 208 N.E.2d 358.

Here, the statements sought to be introduced revealed that oil was seen on the catwalk after the fall, which we note proves nothing. Indeed, the parties do not dispute that oil was on the catwalk at that time—both presented testimony to that fact. The parties disagree as to the inferences sought to be drawn from the evidence. Plaintiff infers that, because oil was on the catwalk after the fall, oil must have been on it before and it must have caused his fall. On the other hand, defendant infers that the oil appeared on the catwalk only after the fall and could not have caused the injury. Thus, the excluded evidence was not of any greater probative value than the admitted evidence, but was merely cumulative of a fact fully established by the other evidence. For these reasons, we believe that the evidence was cumula-

tive, and any error which may have occurred by the circuit court's exclusion was harmless.

 Plaintiff also sought to introduce into evidence a railroad "Occupational Injury and Illness Report" prepared by John Johnson, defendant's superintendent and head of defendant's Midwest division. The document, dated January 7, 1986, indicated that plaintiff slipped in oil and fell to the ground when he was restarting the locomotive's engine. The circuit court barred the exhibit's admission because it was not made within a reasonable time after the accident.

In order to be admissible as an exception to the hearsay rule, business records must have been prepared within a reasonable time after the act or occurrence to which they relate. (*Amos v. Norfolk & Western Ry. Co.* (1989), 191 Ill. App. 3d 637, 548 N.E.2d 96, *appeal denied* (1990), 131 Ill. 2d 557, 553 N.E.2d 393; *People ex rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 448 N.E.2d 950.) The document at issue here was prepared approximately two weeks after plaintiff's fall. The appellate court has held that a delay of up to one month after the occurrence can be considered reasonable. (See *Amos*, 191 Ill. App. 3d at 646.) In view of this, it cannot be said that the two-week delay at issue here was unreasonable. Accordingly, the circuit court erred in barring the exhibit.

We do not believe, however, that this error warrants reversal. The record reveals that the circuit court admitted into evidence a report entitled "Investigation of Injury." This document was prepared on December 26, 1985, which was the first workday following plaintiff's accident. That report indicated that cause of plaintiff's injury was "oil on the catwalk." In light of the contents of this document, the excluded "Occupational Injury and Illness Report" was merely cumulative. See *In re Estate of Veronico*, 78 Ill. App. 3d at 379.

 Plaintiff next contends that the circuit court improperly sustained defense counsel's objection to plaintiff's rebuttal argument. Specifically, plaintiff attempted to argue that had defendant believed that oil had been placed on the catwalk after plaintiff's fall, defendant should have reported the incident to Federal authorities because those involved would be "guilty of a federal crime." The circuit court sustained defense counsel's objection and instructed the jury to disregard the reference to the Federal crime.

The scope and character of closing argument is left to the discretion of the trial judge, who enjoys the best position to view the demeanor of counsel and the atmosphere of the trial. (*Mohler v. Blanchette* (1982), 106 Ill. App. 3d 545, 435 N.E.2d 1161.) Determinations regarding closing arguments will not be reversed absent an abuse of

discretion. *Dotson v. Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036, 510 N.E.2d 1208, *appeal denied* (1987), 116 Ill. 2d 552, 515 N.E.2d 105.

Generally, counsel may properly draw inferences from the evidence in closing argument. (*Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62.) Here, based upon the evidence adduced, one could infer that oil had been placed upon the catwalk. However, plaintiff presented no evidence indicating that such behavior constitutes a federal offense. Counsel is precluded from supplying new or additional facts that are not in the record during closing arguments. (*Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 433.) Although we recognize that an attorney should not be unduly restricted in his closing argument, counsel's reference here was not predicated upon any evidence of criminality introduced during the course of the trial and, as such, was improper. Accordingly, the circuit court did not err in sustaining the objection.

The judgment of the circuit court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.