RONALD S. MIKUS, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

First District (1st Division)    No. 1—98—4289

Opinion filed February 22, 2000.

14

Daley & Mohan, P.C., of Chicago (Raymond H. Groble III and Christopher R. Karsten, of counsel), for appellant.

Callis, Papa, Jackstadt & Halloran, P.C., of Granite City (John T. Papa and Kenneth P. Danzinger, of counsel), and William J. Harte, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff, Ronald Mikus, brought this suit against his employer, defendant Norfolk and Western Railway Company, seeking damages under the Federal Employers' Liability Act (45 U.S.C. §§ 51 through 60 (1988)) (FELA). Plaintiff was injured during his employment as a railroad conductor, when he was struck by a railroad crossing gate arm, which was broken by a truck going through lowering gates at the crossing. Plaintiff claimed this injury was the result of a malfunction in the crossing signals and the negligence of defendant. As a result of this injury plaintiff eventually had two surgeries on his lower back to remove two herniated discs. The jury returned a verdict for plaintiff in the amount of $1,880,000 reduced by 20% for his contributory negligence, for a net amount of $1,504,000.

Defendant contends that the trial court committed the following errors: (1) failed to grant judgment in favor of defendant because a nonparty was the sole proximate cause of plaintiff's injuries; (2) allowed evidence of other broken crossing gates prior to the date of the accident; (3) refused to instruct the jury on the duties of a nonparty truck driver involved in the accident; (4) excluded evidence of defendant's offers of rehabilitation services and alternative employment made to plaintiff and excluded evidence of disability payments defendant made to plaintiff; (5) failed to instruct the jury on plaintiff's duty to mitigate his damages; (6) allowed plaintiff's treating physician to testify about the casual relationship between plaintiff's second surgery and the accident; and (7) instructed the jury on future medical expenses and future lost wages. Defendant also argues that the amount of the verdict was excessive. For the reasons stated below we affirm in part, reverse in part, and remand for a new trial on the issue of damages only.

## I. FACTS

### A. The Accident

Defendant hired plaintiff in June of 1970. Plaintiff's job responsibilities as a conductor switchman included breaking down and building trains that entered or left the Calumet yard. This work was largely

made up of throwing switches, pulling pins, aligning 300-pound draw-bars, carrying 70-pound knuckles, connecting air hoses, and operating hand brakes.

The crossing at 130th Street contained two westbound and two eastbound lanes for vehicular traffic, two main line railroad tracks, and one sliding railroad track that led into the Ford plant. The 130th Street crossing warned vehicular traffic with flashing lights and two long-arm crossing gates for traffic in each direction. On November 23, 1992, plaintiff was working a "Ford" job which required him and his crew to move a train from the Calumet yard to the Ford plant. After the caboose cleared 130th Street, plaintiff and another crew member threw switches to start the crossover of the train from the main track to the side track into the Ford plant. The train then, as typical during this "shove" move, reversed itself onto the side track and slowly moved back toward the 130th Street crossing. Plaintiff's job was to "protect the shove move," or warn traffic of the reversing train coming back across the street. Plaintiff placed himself on the north side of 130th Street and was near the crossing gates that stopped westbound traffic on 130th Street.

As the train reversed itself onto the crossover track and back toward 130th Street, the safety gates and warnings of the 130th Street crossing activated. A truck traveling westbound on 130th Street stopped before the crossing. Plaintiff testified that, after going about halfway down, the crossing gates suddenly stopped and moved upward. When the gates reached their upward position, the flashing lights and other warning devices stopped. The train continued toward the crossing at a slow speed. Plaintiff testified that before the train reached the 130th Street crossing, the warning devices again activated but the long-arm crossing gate for westbound traffic appeared to malfunction. The gate went down and back up two or three times. When the gate went up for the second or third time, the truck began to cross the railroad tracks. Before the truck cleared the crossing, the gate again began to lower. The truck, however, continued through the crossing and struck the lowering crossing gate. The entire gate broke off, hit plaintiff in the back and knocked him to the ground.

William England was seated in his truck at the Ford plant. England testified he watched the 130th Street crossing for a period of 20 seconds. England saw a truck approach, strike a gate, and drive through the crossing without slowing or stopping. England also saw the gate hit plaintiff across the chest, causing plaintiff to fall and appear to be unconscious. England did not see the gates malfunction or go back up and down. England's trial testimony, however, was not completely consistent with two previous statements England had made.

Plaintiff testified that many times before November 23, 1992, the crossing gates would go up and back down during the "shove" move or when the train was reversing back toward the Ford plant. He reported the unusual movement of the gates once, three years before the accident, but noticed no change in the functioning of the gates since that time. Sam Sarcinella and Larry Schimmel, switchmen who worked with plaintiff, testified that they also observed, before the accident, the gates travel up and down during the "shove" move. In fact, Sarcinella and Schimmel observed the erratic movement of the gates regularly during the "shove" move and reported it to defendant. Sarcinella, however, never saw the gates travel halfway down and then back up again.

## B. Evidence of Prior Broken Gates

Defendant moved *in limine* to bar any evidence that, for a period of two years before the accident, vehicular traffic had routinely struck the crossing gates and broken the gates off at the 130th Street railroad crossing. The trial court granted the motion in part because plaintiff lacked any witness that actually saw vehicles strike the crossing gates. The court, however, allowed England to testify that before November 23, 1992, he witnessed vehicles strike the crossing gates two or three times a month.

In defendant's case in chief, L.C. Hopson, who works for defendant as a signal maintainer and is responsible for maintaining the warning devices at the 130th Street crossing, testified that he never saw the gates at that crossing go halfway down, stop, go back up and start back down. Hopson stated that the warning devices passed the inspection tests and worked properly. Hopson further explained that, during a "shove" move, the gates would "time out" and not malfunction. A "time out" occurs when the train initially triggers a motion sensor located 150 feet away from the railroad crossing, thus causing the warning bells and lights to activate and causing the crossing gates to lower gradually. However, because the train either stops or travels less than two miles an hour, the warning devices stop and the gates return to an upward position.

Hopson further testified that a "time out" sequence would not cause the gates to go down halfway and then back up again. According to Hopson, a "time out" sequence would also not occur if the train was within 50 feet of the crossing because, in this case, additional sensors or circuits would activate the warning device and cause the gates to remain in a downward position. Hopson did not know of any reports that the gates went halfway down and back up again during a "shove" move. If he had received this type of complaint, he would have investigated it and repaired any problems.

The trial court ruled that, during Hopson's testimony, defendant opened the door to questions about prior incidents of broken gates at the 130th Street crossing and plaintiff could question Hopson on this issue. Hopson then testified that before November 1992, he routinely examined broken gates at the 130th Street crossing. Hopson stated that he repaired broken gates at least once a week in the months prior to November 1992 and, in some instances, he repaired gates twice a day. Hopson further testified that because of truck traffic at the 130th Street crossing, it was the worst railroad crossing in his territory involving knocked-down or broken gates. Hopson took no steps to prevent further broken or knocked-down gates. Hopson also testified that the railroad changed the material used for the gate from wood to aluminum and fiberglass. With this type of substance, the gates, when struck, did not shatter and were easily reattached to the crossing. The aluminum or fiberglass gate saved the railroad time and money because the gate usually did not need to be replaced. At that crossing, Hopson repaired broken gates over 100 times in a two-year period in 1991 and 1992.

## C. Jury Instructions on Duty of Nonparty

After hearing all the evidence on liability, the trial court denied defendant's request to instruct the jury on the statutory duty of a motor vehicle operator at a railroad crossing and refused to instruct the jury that it may consider evidence that the alleged violation of the statute proximately caused plaintiff's injuries. See 625 ILCS 5/11—1201 (West 1996). The trial court further refused to instruct the jury on the duty of a driver approaching a railroad crossing. See Illinois Pattern Jury Instructions, Civil, No. 73.01 (3d ed. 1995). The court, however, instructed the jury that if it found that the conduct of a nonparty was the sole proximate cause of plaintiff's injuries, then it should find in favor of defendant.

## D. Plaintiff's Damages

Defendant asserted the affirmative defense of plaintiff's failure to mitigate his damages "by failing to engage in vocational rehabilitation programs and failing to seek or resume gainful employment." Prior to trial, plaintiff filed a motion *in limine* to bar evidence that defendant offered rehabilitation and occupational therapy to plaintiff. Plaintiff also moved to bar all evidence that plaintiff failed to mitigate his damages and moved to exclude evidence concerning "the availability of alternate employment positions with the Norfolk and Western Railway Company." Plaintiff argued that the evidence was not admissible because, following the accident, there was no specific job available for plaintiff at defendant's company.

The trial court granted the motion in part and excluded offers defendant made to plaintiff to participate in defendant's "Accelerated Rehabilitation Program" and other efforts defendant undertook to assist plaintiff to return to work. The court, however, allowed defendant to cross-examine plaintiff about plaintiff's inability to find employment after the accident. During cross-examination, plaintiff admitted that, since the accident, he had not sought any employment but, on redirect examination, testified that he sent a letter to defendant, requesting a list of available jobs. When defense counsel attempted to question plaintiff about correspondence defendant sent to him, including rehabilitation offers, the trial court sustained plaintiff's objection and instructed the jury as follows:

> "Ladies and gentlemen of the jury, disregard any of this correspondence that may have come from the plaintiff or from the railroad to the plaintiff, because after the attorneys get involved that's when we start getting this correspondence and we're getting away from the main issue in the case."

The trial court also refused to submit to the jury defendant's proposed instruction on plaintiff's duty to mitigate damages under FELA because the instruction was not an Illinois Pattern Jury Instruction.

After the accident, plaintiff was diagnosed with low back contusion and contusion of the right upper arm and hospitalized for nine days. Plaintiff complained of pain in his back and down his legs. Plaintiff sought treatment from Dr. Schoedinger, a board-certified orthopedic surgeon. Dr. Schoedinger testified he performed a series of diagnostic tests, including an MRI and myelogram, and found a disk rupture at levels L5-S1 of plaintiff's spine and a disk protrusion at level L3-L4 of plaintiff's spine. Dr. Schoedinger performed the surgery, removed the disk at the L5-S1 level, and ordered physical therapy.

Dr. Schoedinger testified that to a reasonable degree of medical certainty the accident on November 23, 1992, caused the disk ruptures and protrusions in plaintiff's spine and related symptoms. Dr. Schoedinger further testified that plaintiff could no longer perform his duties as a conductor switchman, but he believed that plaintiff could perform some type of work. Dr. Schoedinger believed that plaintiff should be examined by a vocational counselor; however, he did not make such a referral. In Dr. Schoedinger's opinion plaintiff's injuries were permanent and plaintiff would continue to have pain in the future.

In 1994, plaintiff moved to North Carolina. Plaintiff continued to have problems with his back and stated that the pain eventually became constant. Plaintiff had difficulty moving and could not dress himself. Plaintiff went to the emergency room and was referred to Dr.

Randall Sherman, a board-certified neurosurgeon. Dr. Sherman began to treat plaintiff on March 1, 1996, and diagnosed plaintiff with a disk herniation at the L3-L4 level of his spine. Dr. Sherman then performed surgery at the L3-L4 level of plaintiff's lumbar spine and removed the herniated disk. Although Dr. Sherman believed that the disk herniation was recent, based on his treatment of plaintiff and review of plaintiff's medical history, he opined to a reasonable degree of medical certainty that the railroad accident caused the herniation.

Dr. Sherman further testified that plaintiff's spine "will not be as normal as it was before he got hurt" because of the accident and the two surgeries. Plaintiff was taking Tylox for back pain as needed. Dr. Sherman, however, was unsure of the future consequences of the permanent change in plaintiff's spine. In Dr. Sherman's opinion plaintiff was unable to return to his job as a conductor switchman, but he could return to some employment with certain lifting restrictions and restrictions on prolonged uninterrupted activity. Dr. Sherman then testified, to a reasonable degree of medical certainty, that plaintiff would require future medical treatment. In Dr. Sherman's opinion, plaintiff's continual need of pain medication indicated that plaintiff would need some future treatment. Dr. Sherman, however, was unsure of the type and quantity of treatment that plaintiff would require in the future. Dr. Sherman last treated plaintiff for his back condition on May 7, 1996. Plaintiff testified that the second surgery relieved a lot of his pain but that he still has pain and tingling in his lower back and down his legs. Since the accident plaintiff had not returned to any form of employment.

## E. Jury Verdict

The jury returned a verdict in favor of plaintiff awarding damages in the amount of $1,880,000, as follows: $300,000 for past lost wages; $780,000 for future lost wages; $250,000 for disability; $450,000 for past and future pain and suffering; $40,000 for past medical expenses; and $60,000 for future medical expenses. The jury reduced the verdict 20% for plaintiff's contributory negligence to $1,504,000.

## II. LIABILITY

### A. Defendant's Liability Under FELA

Defendant first argues that the trial court erred in not granting its motion for a judgment notwithstanding the verdict (judgment *n.o.v.*) because the sole proximate cause of the accident was the conduct of the truck driver who ignored the warning devices and struck the lowering crossing gate. "A court should enter an order of judgment *n.o.v.* only when the evidence, viewed in a light most favorable to the non-

moving party, so overwhelmingly favors the movant that no contrary verdict could stand." *Williams v. Hall*, 288 Ill. App. 3d 917, 919 (1997). The court does not weigh the evidence or consider the credibility of witnesses but views the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. *Cihon v. Cargill, Inc.*, 293 Ill. App. 3d 1055, 1061 (1997). If the trial record reflects a substantial factual dispute arising from the evidence, the court has no power to grant a judgment *n.o.v.* motion. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992).

■ Federal law governs an employer's liability under FELA. *Dawson v. Elgin, Joliet & Eastern Ry. Co.*, 266 Ill. App. 3d 329, 331-32 (1994). Under FELA, plaintiff has the burden to prove negligence by the employer. *Harrison v. Chicago & Northwestern Transportation Co.*, 264 Ill. App. 3d 857, 863 (1994). An employer is liable if, by some defect or insufficiency, it negligently failed to provide its employees a safe place to work. *Gonet v. Chicago & North Western Transportation Co.*, 195 Ill. App. 3d 766, 774 (1990).

■ In this case, plaintiff presented a significant amount of evidence of defendant's negligence at the 130th Street railroad crossing. Plaintiff testified that the crossing gate for westbound traffic malfunctioned during the "shove" move. Plaintiff stated that the crossing gate started down, stopped halfway, went back up, and repeated this movement two or three times. Plaintiff testified that the truck did not enter the crossing until after the gate repeatedly went down and back up and after the gate seemed to plaintiff to return to an upright, safe position. Moreover, Sarcinella and Schimmel confirmed that the crossing gates would malfunction during the "shove" move, that this malfunction occurred often, and that they reported it to the defendant. Defendant's employees testified that warning devices and gates would "time out" when the train slowly reversed and therefore the crossing gates would lower, stop, and resume again within a short period of time. There was evidence to support plaintiff's theory that defendant knew about these problems but did not correct these problems thereby failing to protect its employees from the danger of erratic warning signals and crossing gates.

Defendant claims that it is entitled to a judgment *n.o.v.* because the sole cause of the accident was the conduct of the driver of the truck that struck the crossing gate. Defendant relies on *Inman v. Baltimore & Ohio R.R. Co.*, 361 U.S. 138, 4 L. Ed. 2d 198, 80 S. Ct. 242 (1959). In *Inman*, an intoxicated motorist ignored the warnings of a railroad crossing, attempted to cross the railroad tracks, and struck plaintiff, a railroad flagman. Plaintiff did not allege that the warning devices malfunctioned at the railroad but offered evidence that the

railroad crossing had substantial vehicular traffic. The Supreme Court found that plaintiff failed to demonstrate a hazardous workplace and entered judgment in favor of the railroad. *Inman*, 361 U.S. at 140-41, 4 L. Ed. 2d at 201, 80 S. Ct. at 244. *Inman*, however, is distinguishable because the warning devices and crossing gates in that case were properly working and the sole cause of the accident was the conduct of a third-party who disregarded the warnings at the crossing, crossed the track in front of a train, and struck the flagman. The court refused to find liability because there was no evidence of similar occurrences or any notice to the railroad of a hazardous railroad crossing. *Inman*, 361 U.S. at 140-41, 4 L. Ed. 2d at 201, 80 S. Ct. at 244.

Here, by contrast, plaintiff offered probative evidence of an unsafe and hazardous railroad crossing. The record reflects a railroad crossing with warning devices and crossing gates that repeatedly malfunctioned. Both parties agreed that, during the "shove" move, the gates often activated and then disengaged within a short period of time. Plaintiff contended that this movement of the gates demonstrated negligently maintained signal mechanisms, improper design of the railroad crossing, and a defect in the operation of the "shove" move that defendant knew about but did not remedy. Plaintiff also presented evidence that defendant had knowledge that the crossing gates at the 130th Street railroad crossing had been routinely broken or knocked down in a two-year period prior to the accident. Despite this knowledge, defendant did nothing to remedy this generally hazardous work site. As a result, plaintiff claimed that defendant did not provide sufficient protections and warnings for its employees at the 130th Street crossing and violated FELA. Defendant disputed plaintiff's claims and contended that the gates functioned normally. The jury resolved this factual question in favor of the plaintiff, and we find sufficient evidence in the record to support the jury's decision. The trial court therefore properly denied defendant's motion for judgment *n.o.v.*

## B. Admission of Prior Accidents

■ Defendant claims that the trial court improperly allowed testimony about prior broken crossing gates and prior accidents at the 130th Street crossing. The trial court's ruling on the admissibility of evidence during the course of a trial will not be reversed on appeal absent an abuse of discretion. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 92 (1995). In Illinois, courts recognize that evidence of prior accidents or occurrences may be admissible if relevant to the proponent's case. *Henderson v. Illinois Central Gulf R.R. Co.*, 114 Ill. App. 3d 754, 758 (1983). Generally, a prior accident or occurrence is relevant to a plaintiff's case for two purposes: " '(1) to show the existence of a par-

ticular danger or hazard; or (2) to show defendant's notice of the generally hazardous nature of the accident site.' " *Turgeon v. Commonwealth Edison Co.*, 258 Ill. App. 3d 234, 239 (1994), quoting *Trimble v. Olympic Tavern, Inc.*, 239 Ill. App. 3d 393, 397 (1993). A plaintiff, however, is only required to lay a foundation of substantial similarity between the prior and present accidents if plaintiff offers the prior accident evidence to show a particular hazard or danger. *Turgeon*, 258 Ill. App. 3d at 239.

■ If the evidence of prior accidents is being offered only to show the defendant's notice of the generally hazardous nature of the accident site, the proponent does not have to establish a foundation showing the similarity between the prior accidents and the present accident. *Henderson*, 114 Ill. App. 3d at 758. Evidence of the dissimilar prior accidents is admissible on the issue of whether the defendant knew the accident site was generally hazardous. *Henderson*, 114 Ill. App. 3d at 758. Both plaintiff and defendant presented evidence regarding the circuit sensors and the conduct of the crossing gates and warning devices during the "shove" move. Plaintiff's evidence indicated that many times prior to the present accident, the gates and warning devices operated erratically, starting and stopping as the train began reversing back through the 130th Street crossing. Defendant's evidence, in contrast, contradicted plaintiff's claim of erratic gate movement and explained that the gates properly stopped consistent with the circuit sensors.

Defendant maintains that the court erred in allowing evidence of prior broken gates at the 130th Street crossing because there was no evidence that these gates were broken as a result of a malfunctioning warning device or crossing gate. The court allowed England to testify that he saw vehicular traffic strike and break off crossing gates at the 130th Street crossing. The court also allowed plaintiff to cross-examine defendant's safety employee, Hopson, about fixing and repairing broken gates at the 130th Street crossing over 100 times in the two years prior to the accident. We agree with defendant that plaintiff did not establish the similarity between the prior accidents and the accident at issue. *Turgeon*, 258 Ill. App. 3d at 240-41. Plaintiff offered some evidence that vehicular traffic knocked off crossing gates prior to November 23, 1992, but plaintiff offered no evidence connecting the broken gates to malfunctioning warning devices or to the slow movement of an approaching train. In fact, plaintiff offered no evidence that these prior accidents occurred during the "shove" move.

■ We nevertheless fail to find any error because we conclude that evidence of prior broken gates and prior accidents was properly admitted to show defendant's notice of the generally hazardous nature of

the accident site. In *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 463-64 (1992), our supreme court determined that the trial court did not abuse its discretion in allowing evidence of prior dissimilar accidents on the railroad owned by the Chicago Transit Authority (CTA). Plaintiff's evidence included testimony from the head of the CTA safety department about the date, place, and nature of the prior incidents on the tracks. *Lee*, 152 Ill. 2d at 463-64. The court held that the testimony constituted relevant notice evidence, did not confuse the jury, and was not unfairly prejudicial. *Lee*, 152 Ill. 2d at 464.

Similarly, in this case, Hopson's testimony of broken gates from February 1990 to the date of the accident included dates and places that the gates were broken and testimony that Hopson repaired the broken gates. Hopson's conduct established that defendant had notice about the dangerous nature of the 130th Street railroad crossing. When "plaintiff alleges that the accident site is of a *generally hazardous* nature, he should be allowed to enter evidence of any prior accident—regardless of its similarity to the accident *sub judice.*" (Emphasis in original.) *Henderson*, 114 Ill. App. 3d at 759. Here, plaintiff offered the prior-accident evidence to prove defendant's notice of the generally hazardous nature of the accident site and defendant's failure to take the appropriate remedial measures to protect its employees from these dangers, including providing additional safety equipment, changing the "time out" sequence, or providing better warnings to its employees about the dangerous accident site.

■ Defendant relies on *Boersma v. Amoco Oil Co.*, 276 Ill. App. 3d 638 (1995), to support its argument that the trial court erred in finding that defendant opened the door to the admissibility of the prior incidents of broken gates. In *Boersma*, the issue before the court was the admissibility of a subsequent catastrophic leak to the accident site. The court found that the defendant did not open the door to evidence of the subsequent accident because the plaintiff actually brought out the testimony about leaks at the accident site. *Boersma*, 276 Ill. App. 3d at 651. *Boersma*, however, is not helpful because it involves subsequent accidents, which are not relevant to a defendant's notice of a generally dangerous accident site.

We find that defendant in direct examination of Hopson did open the door regarding prior broken gates and thus plaintiff properly cross-examined Hopson about this issue. During direct examination, Hopson testified that he regularly inspected the 130th Street crossing on a monthly, quarterly, and yearly basis. He tested the warning devices, the circuitry, and the crossing gates. Hopson testified that, during these inspections and on other occasions, he observed "the safe

operation of the gates and the flashing lights." Hopson also testified that if there were any malfunctions, such as the gates only going down halfway, it would have been reported to him, and he would have fixed it. Thus, Hopson's testimony indicated that the gates operated safely for several years prior to November 23, 1992, and defendant maintained a crossing with safely operating gates. Based on this testimony, plaintiff had the right on cross-examination to rebut Hopson's testimony with evidence about the numerous incidents of broken gates that Hopson not only had knowledge of but witnessed and fixed. Plaintiff properly demonstrated that the 130th Street crossing was saturated with problems of broken or knocked-down gates before the accident in this case. Not only did defendant open the door regarding prior broken gates, but for the reasons previously discussed, plaintiff properly cross-examined Hopson regarding prior broken gates to establish defendant's notice of the generally hazardous nature of the accident site. Therefore, the trial court did not abuse its discretion in permitting evidence of prior broken gates at the 130th Street railroad crossing.

### C. Defendant's Nonparty Liability Jury Instructions

Defendant next argues that the trial court erred in rejecting two instructions defendant submitted regarding the liability of a nonparty truck driver. The issue of jury instructions is subject to an abuse of discretion standard. Defendant first requested that the court instruct the jury on evidence of a nonparty's statutory violation under the Illinois Vehicle Code (625 ILCS 5/11—1201 (West 1996)) as a proximate cause of plaintiff's injury. The defendant tendered Illinois Pattern Jury Instruction, Civil, No. 60.01 (3d 1995) (hereinafter IPI Civil 3d), which included part of section 11—1201 of the Vehicle Code. The instruction stated in part as follows:

"Whenever any person driving a vehicle approaches a railroad grade crossing such person must exercise due care and caution and shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad and shall not proceed until he can do so safely. A person shall not drive any vehicle through, around or under any crossing gate barrier at a railroad crossing while such gate or barrier is closed or being opened or closed."

The trial court has discretion as to which jury instructions to use with the jury, and "[t]he test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety." *Leonardi*, 168 Ill. 2d at 100. The notes to IPI Civil 3d No. 60.01 state in part: "This instruction should be given only where the evidence would support a finding that the

injury complained of was proximately caused by a violation of the statute *** intended to protect against such an injury, and that the injured party is within the class intended to be protected by the statute ***." IPI Civil 3d No. 60.01, Notes on Use, at 247.

■ IPI Civil 3d No. 60.01 therefore applies when plaintiff was engaging in an activity contemplated by the statute allegedly violated and the violation of the statute proximately caused plaintiff's injury. *Bitner v. Lester B. Knight & Associates, Inc.*, 16 Ill. App. 3d 857, 862 (1974). Here, plaintiff was performing his job as a conductor switchman and protecting the crossing from the reversing train. He was, therefore, within the traffic crossing and a member of the class protected by the statute. The fact that he may have been on foot within the crossing rather than in a vehicle is irrelevant to the analysis of who is protected under section 11—1201 of the Vehicle Code. Therefore, the record contains an evidentiary foundation that supports defendant's proposed instruction.

Nevertheless, in rejecting defendant's proposed instruction, the trial court did not take this issue away from the jury's consideration. The jury received an instruction on the conduct of the truck driver in this case which stated that if the jury determined that the truck driver was the sole proximate cause of plaintiff's injury, then it should find for defendant. IPI Civil 3d No. 12.04. The trial court in its discretion may select certain instructions on a principle of law to submit to the jury and decline to submit other instructions that embody the same principle of law. *Bernardoni v. Hebel*, 101 Ill. App. 3d 172, 177 (1981). We conclude that, based on the tender of IPI Civil 3d No. 12.04, the jury was adequately informed regarding the legal consequences of the conduct of the nonparty truck driver. Moreover, IPI Civil 3d No. 12.04 was more helpful to the defendant than its proposed IPI Civil 3d No. 60.01 instruction because IPI Civil 3d No. 12.04 required the jury to render a verdict in favor of the defendant if it determined that the nonparty truck driver was the sole proximate cause of the accident. Therefore, we do not find any abuse of discretion by the court's rejection of defendant's proposed instruction, and its decision to tender IPI Civil 3d No. 12.04.

■ Defendant also claims it was error for the trial court to refuse to submit to the jury its instruction No. 36, which was modeled after IPI Civil 3d No. 73.01. The instruction offered by the defendant read as follows:

"A railroad crossing is a place of danger. If you believe from the evidence that as the non-party truck driver was approaching the crossing he knew, or, in the exercise of ordinary care should have known, that a train approaching the crossing was so close to the

crossing that it would be likely to arrive at the crossing at about the same time as the non-party truck driver's vehicle, then it was the duty of the non-party truck driver to yield the right of way to the train."

The comments to IPI Civil 3d No. 73.01 state that this instruction is properly tendered "if the crossing gates and flashers were operating properly." IPI Civil 3d No. 73.01, Comment, at 269, citing *Frankenthal v. Grand Trunk Western R.R. Co.*, 120 Ill. App. 3d 409 (1983). In this case, plaintiff testified that the signal devices and crossing gates were malfunctioning at the 130th Street crossing at the time of the accident and Sarcinella's testimony corroborated the erratic behavior of the gates. No witness described any impending collision between the train and the nonparty truck driver. Rather, the train had completely crossed the 130th Street crossing and was either stopped or reversing at a very slow speed several yards away from 130th Street. The nonparty truck driver did not drive in front of an approaching train but drove through a descending crossing gate. Moreover, the IPI instruction references a plaintiff's or decedent's vehicle, which defendant changed to a nonparty vehicle. Clearly, under the facts of this case, no plaintiff's or decedent's vehicle violated a duty to yield the right of way to the train. While this instruction may be appropriate in cases involving vehicle-train collisions at a railroad crossing, this case did not involve a vehicle-train collision. See IPI Civil 3d, Introduction to 73.00, Railroad Crossings. Therefore, the trial court did not abuse its discretion in refusing to submit defendant's version of IPI Civil 3d No. 73.01 to the jury as it was not warranted by the facts of this case.

## III. CAUSATION

█ Defendant next claims that the trial court erred in allowing Dr. Sherman to testify that the accident caused plaintiff's L3-L4 disk herniation and second surgery. A medical expert may offer an opinion on causation if the expert's opinion is based upon a reasonable degree of medical certainty and not based upon speculation or conjecture. *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 978 (1998). The expert may also testify in terms of probabilities or possibilities if the opinion is based on a reasonable degree of medical certainty. *Wojcik*, 299 Ill. App. 3d at 978. Thus, examination of plaintiff and review of plaintiff's medical history provide sufficient foundation from which the treating physician may offer opinions on the cause of plaintiff's injury. *Geers v. Brichta*, 248 Ill. App. 3d 398, 408 (1993). "The relative weight and sufficiency of expert testimony is peculiarly within the province of the jury." *Ziekert v. Cox*, 182 Ill. App. 3d 926, 930 (1989).

█ Dr. Sherman testified that he examined plaintiff and performed surgery on plaintiff's spine. Although Dr. Sherman did not ask plaintiff

about his past history and the accident at issue, he did review Dr. Schoedinger's medical history of plaintiff, which included a description of the accident and the results of diagnostic tests performed on plaintiff's spine shortly after the accident. He testified that these are records reasonably relied upon by medical doctors. Based on these facts, Dr. Sherman testified to a reasonable degree of medical certainty that the railroad accident caused plaintiff's L3-L4 herniation and required a second surgery. Dr. Sherman's expert opinion was based on fact, foundationally sufficient, and thus properly admitted.

## IV. DAMAGES

### A. Trial Court's Exclusion of Evidence of Defendant's Efforts to Provide Plaintiff Rehabilitation Services and Alternative Employment

We now turn to defendant's arguments relating to the damage phase of the trial. In two closely related arguments, defendant contends that the trial court erred in excluding evidence of its efforts to provide plaintiff with rehabilitation services and alternative employment and declining to instruct the jury on plaintiff's duty to mitigate damages. We review the trial court's rulings under an abuse of discretion standard. *Leonardi*, 168 Ill. 2d at 92, 100.

Defendant made two offers of proof regarding the evidence of the rehabilitation services it offered to plaintiff which the trial court barred. Additionally, before resting, defense counsel informed the trial court that it wanted to call its employee, Richard Hayth, to testify about the employment and rehabilitation offers defendant extended to plaintiff. Hayth was the systems manager of defendant's disability support services and helped manage defendant's rehabilitation program. In addition, defendant submitted to the trial court documentary evidence including several written offers and letters defendant made to plaintiff about the nature of its rehabilitation services and the opportunities and assistance available to plaintiff in locating suitable employment. Defendant therefore adequately informed the trial court of the evidence it requested to present to the jury and preserved this issue for review. *Lagestee v. Days Inn Management Co.*, 303 Ill. App. 3d 935, 942 (1999).

The measure of a plaintiff's damages in a FELA case is federal in nature even if plaintiff brings his cause of action in state court. *Van Holt v. National R.R. Passenger Corp.*, 283 Ill. App. 3d 62, 73, (1996). Interpreting federal substantive law, Illinois and federal courts unequivocally hold that, under FELA, a plaintiff has a duty to mitigate damages and secure gainful employment within a reasonable time after plaintiff's injury. *Brown v. Chicago & North Western*

*Transportation Co.*, 162 Ill. App. 3d 926, 932 (1987); *Roberts v. Norfolk & Western Ry. Co.*, 229 Ill. App. 3d 706, 722 (1992); *Trejo v. Denver & Rio Grande Western R.R. Co.*, 568 F.2d 181, 184 (10th Cir. 1977).

In *Brown*, the trial court refused to instruct the jury on plaintiff's duty to mitigate his damages and defendant appealed from an unfavorable jury verdict. On appeal, plaintiff argued that the trial court properly refused to submit the mitigation instruction because defendant offered no evidence to support the instruction. Plaintiff claimed that, following his injury, defendant did not communicate any available employment that plaintiff could perform in his physical condition or produce any evidence that its rehabilitation programs would have reduced plaintiff's damages. *Brown*, 162 Ill. App. 3d at 932. Rejecting plaintiff's argument and finding the lack of a mitigation instruction was reversible error, the court noted the issue of plaintiff's failure to mitigate damages is a question of fact for the jury to resolve and, based on plaintiff's conduct, the jury could conclude that plaintiff was uncooperative in finding alternative employment and reduce his damages accordingly. *Brown*, 162 Ill. App. 3d at 932. The court further noted: "Though there was no evidence presented of other jobs available to him, North Western obviously was never given the opportunity to determine if it could place Brown in another position or educate or retrain him for new duties or responsibilities." *Brown*, 162 Ill. App. 3d at 933. Thus, under FELA, evidence of an employer's efforts to find suitable employment and rehabilitation services for an injured employee is relevant to the issue of whether the employee mitigated his damages.

In this case, the trial court erred in precluding evidence of defendant's efforts and offers to provide plaintiff rehabilitation services and suitable alternative employment. Beginning in 1994, defendant wrote to plaintiff and his attorney numerous times about entering plaintiff into a rehabilitation program, providing plaintiff with training or education, and finding plaintiff alternative employment. In 1995, defendant offered plaintiff a position of yardmaster, which it described as "sedentary in nature." In 1997, plaintiff responded to defendant's offers of rehabilitation and asked for a list of available jobs and descriptions within defendant's company in light of his physical restrictions. Defendant then requested that plaintiff be evaluated by its rehabilitation department to determine which sedentary jobs he could perform. Plaintiff did not respond further to defendant's offer to enter plaintiff in a rehabilitation program or otherwise allow himself to be evaluated. Plaintiff did not seek his own rehabilitation counselor. Plaintiff did not seek any work with defendant or any other employer. The question of whether the conduct of plaintiff was reasonable effort

under the circumstances of this case was a question of fact for the jury to resolve with proper instructions. *Brown*, 162 Ill. App. 3d at 932. Therefore, the jury was entitled to evaluate the rehabilitation and employment proposals defendant offered to plaintiff and consider this evidence in determining plaintiff's damages.

The trial court ruled that defendant's rehabilitation efforts were inadmissible because litigation had begun between the parties and the correspondences between the parties did not relate to the main issues of the case. Plaintiff cites this reasoning to support his claim that defendant's rehabilitation offers were inadmissible. Plaintiff, however, offers no authority for the principle that defendant's rehabilitation offers to plaintiff and attempts to seek employment for plaintiff are irrelevant issues under FELA or should be barred because they occurred after litigation had begun. Rather, because a plaintiff who seeks damages under FELA has an affirmative duty to mitigate damages, the jury may properly reduce a plaintiff's damages when a plaintiff fails to make reasonable efforts to mitigate his damages. *Brown*, 162 Ill. App. 3d at 932. Thus, the fact that the defendant in this case offered rehabilitation services and alternative employment after litigation had begun does not render evidence of defendant's offers inadmissible. To so hold could put a chilling effect on the motivation of employers to offer injured employees rehabilitation services and suitable alternative employment. In actions brought under FELA an employee has the duty to mitigate damages. *Brown*, 162 Ill. App. 3d at 932. Therefore, the trial court's exclusion of evidence of defendant's offers of rehabilitative services and alternative employment was an abuse of discretion. Such evidence is relevant to the issue of whether the plaintiff mitigated damages.

## B. Failure to Instruct Jury on Plaintiff's Duty to Mitigate His Damages

■ Defendant is entitled to a mitigation instruction if evidence in the record supports defendant's claim that plaintiff failed to mitigate damages. *Brown*, 162 Ill. App. 3d at 932; *Van Holt*, 283 Ill. App. 3d at 76. The issue of whether plaintiff mitigated his damages, taking into consideration his injury and the opportunities available to him, is a fact question for the jury to decide. *Brown*, 162 Ill. App. 3d at 932. Even though the trial court erroneously excluded defendant's rehabilitation efforts toward plaintiff which would have provided evidence warranting a mitigation instruction, we note that other evidence in the record also supported defendant's theory that plaintiff did not mitigate his damages. Plaintiff acknowledged that he has not received treatment for his injuries from the accident since May 7, 1996.

Plaintiff, however, testified that he has not worked, tried to work, or sought employment since the accident in 1992.

Plaintiff relies on *Amos v. Norfolk & Western Ry. Co.*, 191 Ill. App. 3d 637 (1989), for support that there was no evidence to warrant a mitigation instruction. *Amos*, however, is distinguishable. In *Amos*, unlike the instant case, the injured railroad worker's treating physicians testified that he could not resume employment with the railroad, even with light duty or in a sedentary job. *Amos*, 191 Ill. App. 3d at 643-44. Here both Dr. Schoedinger and Dr. Sherman testified plaintiff could resume employment with certain lifting and movement restrictions. Moreover, a rehabilitation counselor in *Amos* testified that he evaluated the injured railroad worker and determined that the injured worker had very few transferable skills and was unable to perform work on a sustained basis. The rehabilitation counselor essentially agreed with the treating physician that the injured worker was "unable to return to any type of employment." *Amos*, 191 Ill. App. 3d at 645.

In this case, although plaintiff testified at trial in August 1998 that he was in constant back pain and he could not concentrate for sustained periods of times, he had not sought treatment for his back since May 1996. Dr. Sherman additionally testified that plaintiff demonstrated improved movement in his back in 1996 and could resume gainful employment. Moreover, unlike the conduct of the railroad worker in *Amos*, plaintiff did not respond to defendant's request that he be evaluated by a rehabilitation counselor. Plaintiff also did not respond to defendant's offer of rehabilitation services and did not respond to defendant's request that he enroll himself in a rehabilitation program. Therefore, we conclude that defendant presented sufficient evidence to warrant submitting a mitigation instruction to the jury and the trial court erred in not giving such an instruction to the jury.

Plaintiff alternatively argues that the trial court properly excluded defendant's proposed mitigation instruction because it was non-IPI. Defendant's proposed instruction stated as follows:

> "An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic lost resulting from his injury, by resuming gainful employment, obtaining further scholastic training, vocational or rehabilitation training or any other preparation reasonably necessary to improve the plaintiff's earning ability in light of his injury, as soon as such can reasonably be done. If he does not resume available employment, even though he is physically able to do so, such person may not recover for damages for earnings lost after the date on which he was or reasonably could have been able to return to some form of gainful employment."

Under Supreme Court Rule 239(a), a non-IPI instruction is proper if the court determines that the jury is entitled to an instruction on an issue not contained within the IPI and the instruction is "simple, brief, impartial, and free from argument." 177 Ill. 2d R. 239(a). In *Roberts v. Norfolk & Western Ry. Co.*, 229 Ill. App. 3d 706, 722 (1992), the trial court rejected defendant's proposed mitigation instruction and tendered an instruction similar to the proposed instruction in *Brown*. The appellate court affirmed because the instruction was "simple, brief, nonargumentative, and correctly stated the law as noted in *Brown*." *Roberts*, 229 Ill. App. 3d at 722. We note the *Brown* court recognized that defendant's proposed mitigation instruction did not indicate that a defendant has the burden to prove a plaintiff's failure to mitigate damages and on remand directed that the instruction should be structured to inform the jury of defendant's burden. *Brown*, 162 Ill. App. 3d at 935. The mitigation instruction proposed in *Brown* stated:

> " 'An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can reasonably be done.
>
> Failure of an injured party to make a reasonable effort to minimize damages does not prevent all recovery for economic loss, but it does preclude recovery for damages or losses which could have been avoided had a reasonable effort to lessen damages been made.' " *Brown*, 162 Ill. App. 3d at 931.

The instruction in *Roberts* was the same as the *Brown* instruction but did not contain the phrase "by resuming gainful employment as soon as such can reasonably be done."

We agree with plaintiff that defendant's proposed mitigation instruction does not conform with Supreme Court Rule 239(a) because it does not correctly state the law as to plaintiff's duty to mitigate damages and defendant's burden of proving the failure to mitigate damages. Rule 239(a) imposes a burden on the court to assist counsel in modifying counsel's non-IPI instruction to conform to the rule's requirements when the court determines that an instruction is warranted on a non-IPI subject. 177 Ill. 2d R. 239(a). On remand a mitigation instruction should be given comparable to the instructions in *Brown* and *Roberts*. Additionally, the mitigation instruction or companion instruction should be structured so as to inform the jury that the burden of proving the failure of plaintiff to mitigate damages is on the defendant. *Brown*, 162 Ill. App. 3d at 935.

We conclude that the trial court's exclusion of evidence of defendant's rehabilitation offers and offers of alternative employment

together with the failure to instruct the jury on plaintiff's duty to mitigate damages constitutes reversible error. Therefore, defendant is entitled to a new trial on the issue of damages only.

## C. Evidence of Disability Payments

■ Defendant argues that the trial court erred in excluding evidence that plaintiff receives disability payments from the Railroad Retirement Board. Under FELA, an employer is not entitled to a setoff for a fringe benefit provided to its employees, such as a retirement fund, because an employer establishes the benefit for a reason other than to indemnify itself against liability. *Van Holt*, 283 Ill. App. 3d at 78. Therefore, the trial court properly found that evidence of a plaintiff's retirement fund benefit falls under the collateral source rule and is inadmissible.

## D. Instructions on Plaintiff's Future Damage Claims

■ Defendant finally argues that because plaintiff presented no competent evidence of future medical expenses or future lost wages, the trial court erred in submitting these damage instructions to the jury. A plaintiff need only cite to "some evidence" in the record to be entitled to an instruction on a damage claim. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 406-07 (1998). Although our supreme court acknowledges that the "some evidence" standard represents a modest evidentiary threshold, the evidence offered must be "reliable and grounded in more than mere possibilities." *LaFever*, 185 Ill. 2d at 408.

We conclude that there was "some evidence" to warrant a future medical expense instruction. Dr. Sherman testified that, based on a reasonable degree of medical certainty, plaintiff will require future medical treatment on his back. As a factual basis for this opinion, Dr. Sherman testified that plaintiff has "continued to require intermittent pain medications." Defendant, however, claims that plaintiff did not establish a reasonable certainty of proof of future medical care because on cross-examination Dr. Sherman stated that any future medical treatment plaintiff will receive other than medication would be speculative. This testimony does not contradict Dr. Sherman's direct testimony that plaintiff will *require* future medical treatment. Dr. Sherman refused to speculate on the *type* of future treatment plaintiff will require other than intermittent medication. In *LaFever*, the supreme court distinguished between the "some evidence" standard that entitles a plaintiff to a jury instruction on an element of future damages and the "reasonably certain proof" standard that represents the quantum of proof plaintiff needs to prevail on his damage claim. *LaFever*, 185 Ill. 2d at 407. The court noted: "[P]laintiff need only furnish 'some evidence' probative of his claim to earn a jury instruc-

tion on that claim, and neither the trial court nor a court of review must be convinced of the persuasiveness of that evidence before the issue may be submitted to the jury for its deliberations." *LaFever*, 185 Ill. 2d at 407. Dr. Sherman's testimony satisfies the "some evidence" standard and supports a jury instruction on future medical expenses.

We note that the jury awarded plaintiff $60,000 for future medical care, and Dr. Sherman's testimony was the only evidentiary basis for the damage award. We, however, need not address whether plaintiff met its quantum of proof to satisfy the jury's damage award because we are remanding this case for a new trial on the issue of damages. We only hold that Dr. Sherman's testimony provided "some evidence" of future medical care to warrant a jury instruction on this damage claim.

Examining the evidentiary basis for an instruction for a future lost wages claim, our supreme court, in *LaFever*, held that plaintiff need not present expert testimony of loss of future earnings to satisfy the "some evidence" threshold. Plaintiff's demeanor on the witness stand and plaintiff's testimony about his injuries, their duration, and their impairment on plaintiff's ability to work provide sufficient foundation to warrant a future lost wages instruction. *LaFever*, 185 Ill. 2d at 406-07. Therefore, a jury may calculate future lost wages if the record reflects plaintiff sustained a permanent injury that prevents plaintiff from being employed. *LaFever*, 185 Ill. 2d at 407.

In this case, plaintiff presented "some evidence" to support his future lost wages claim and thus the trial court properly instructed the jury on this claim. Plaintiff testified that since his injury to his back, he has constant pain, tingling, and numbness. Plaintiff stated because he experiences pain within a half hour of beginning most physical activities, he requires substantial time to rest. Both Dr. Schoedinger and Dr. Sherman testified that plaintiff could no longer perform the job of a railroad conductor switchman. Both testified about permanent changes to plaintiff's back which caused plaintiff's inability to do this type of work. We need not address whether the jury's verdict for future lost wages is consistent with the amount of damages plaintiff's evidence proved since we are remanding for retrial on the issue of damages. We only hold that plaintiff presented sufficient evidence of future lost wages to satisfy the "some evidence" threshold recognized in *LaFever* and we find the jury was properly instructed on this damage claim. *LaFever*, 185 Ill. 2d at 406-07.

## IV. CONCLUSION

For the foregoing reasons, we affirm on the issue of defendant's liability. We reverse and remand the case for a new trial on the issue of

damages only because the trial court excluded evidence of defendant's rehabilitation offers and offers of alternative employment to plaintiff and failed to instruct the jury on plaintiff's duty to mitigate his damages.

Affirmed in part and reversed in part; cause remanded.

RAKOWSKI and GALLAGHER, JJ., concur.